**LOCKHEED MARTIN CORPORATION,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

**Civil Action No. 08–1160 (JR).**

United States District Court, District of Columbia.

Sept. 29, 2009.

Raymond B. Ludwiszewski, Michael K. Murphy, Gibson, Dunn & Crutcher, L.L.P., Washington, DC, for Plaintiff.

George L. Burnett, John E. Sullivan, United States Department of Justice, Washington, DC, for Defendant.

### MEMORANDUM ORDER

JAMES ROBERTSON, District Judge.

From 1961 to 1975, the Lockheed Propulsion Company[1] developed and manufactured rocket systems for the United States government at three facilities in southern California (collectively, "the Site"). In the 1990s, state and federal agencies discovered chemical contamination in the soil and groundwater surrounding the Site and ordered Lockheed to prepare and implement a remedial action plan. Lockheed alleges that it has spent, and will continue to spend, millions of dollars to comply with that order. In this suit, it seeks to recover response costs from the United States under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), alleging that the government arranged for the disposal of chemical contaminants and effectively owned and operated the Site. *See* 42 U.S.C. § 9607.

The government moves for summary judgment on its so-called "double recovery defense." The defense is a two-step argument: (1) that collateral estoppel requires the Court, and Lockheed, to accept the determination in *Procter v. Lockheed Corp.*, Case No. 731752 (Cal.Super.Ct. Oct. 22, 2003), that the government is in fact reimbursing Lockheed for the response costs it incurs at the Site through various government contracts; and (2) that, because Lockheed is already being reimbursed by the government, it cannot recover response costs again under CERCLA.

Lockheed counters with a motion under Federal Rule of Civil Procedure 56(f), seeking leave to conduct additional discovery before responding to the government's motion. It also moves for judgment on the pleadings that the government's second and sixteenth affirmative defenses (which assert the double recovery defense) are invalid as a matter of law.

The government's motion and Lockheed's Rule 56(f) motion will be denied. Lockheed's motion for judgment on the pleadings will be granted in part.

### Background

In a conventional CERCLA case, the plaintiff seeks a ruling that the defendant (commonly referred to as the "potentially responsible party" or "PRP") is liable for some portion of the response costs at a particular site. This is such a case, but it is complicated by the fact that the PRP—

---

[1]. The Lockheed Propulsion Company was an operating division of Lockheed Aircraft Corporation, which, in 1977, became the Lockheed Corporation. The Lockheed Corporation merged with the Martin Marietta Corporation in 1995 to form the Lockheed Martin Corporation, the plaintiff in this action.

the government—is also the plaintiff's largest client. Lockheed generates most of its revenue from government contracts, and the nature of those contracts creates the rub of this case.

The government pays its contractors in accordance with a byzantine set of rules known as the Federal Acquisition Regulation (FAR). Pursuant to the FAR, the government pays contractors their "direct" costs and their "indirect" costs, plus a profit. Direct costs are costs related to a specific contract, such as materials and labor. *See* 48 C.F.R. § 52.216–7(b). Indirect costs are costs that are not associated with a specific contract—essentially, overhead. *Id.* § 52.216–7(d).

The government will only reimburse a contractor for indirect costs that are "allowable"—"incurred by a reasonably prudent business person"—"allocable," and not otherwise disallowed. *Id.* §§ 31.201–2, 201–3, 201–4. Environmental cleanup costs can be treated as indirect costs if they meet these three criteria.

During contract performance, a contractor can submit invoices (as frequently as every two weeks) requesting payment for certain costs, including "[p]roperly allocable and allowable indirect costs." *Id.* § 52.216–7(b)(1)(F). These are only interim payments; once contract performance is complete, the government can pay more (as it usually does) or ask for a refund, depending on its final indirect cost calculations.

In the 1980s and 1990s, federal and state environmental agencies discovered contaminants at several of Lockheed's former research and development facilities and ordered Lockheed to develop and implement remediation plans. As the response costs piled up, Lockheed found itself in disputes with both the government-as-client and the government-as-PRP. Lockheed and the government-as-client entered into negotiations about whether the response costs were "allowable" indirect costs, and, if so, how they should be allocated across Lockheed's various government contracts. Simultaneously, Lockheed named the government as a PRP in *United States v. Lockheed Martin Corp.*, No. 91–4527–MRP (C.D.Cal.), a CERCLA suit about the parties' respective liability for response costs at Lockheed's former research facility in Burbank.

The parties resolved the Burbank suit by agreement in January 2000. To discharge the CERCLA claim against it, the government agreed to pay a percentage of Lockheed's past and future response costs at the site, plus interest. *See* Dkt. 26, Ex. 1, at 8–9. Under the terms of the consent decree, as Lockheed incurred costs, it would submit periodic reimbursement requests to the government, which would pay its share of the costs directly to Lockheed (not through any existing or future government contracts). *Id.*, at 9–10. The agreement specified that the government-as-client could not defray the costs owed to Lockheed by the government-as-PRP: While the government could dispute Lockheed's reimbursement requests on certain enumerated grounds, it could not challenge a request on the ground that the costs had been "previously reimbursed by the United States or another party through an overhead pool pursuant to contracts between Lockheed and any other person or entity, including the United States." *Id.*, at 13.

In September 2000, Lockheed and the government-as-client settled their dispute over the billing of Lockheed's response costs. Their agreement (the "Billing Settlement") defined "Settled Discontinued Operations Costs" as the response costs that Lockheed had incurred, or would incur, at facilities it had closed before January 1, 2000, including costs incurred at the Site at issue in this case and at the Bur-

bank site. Dkt. 25, Ex. 3, § 1.8. The amount of Settled Discontinued Operations Costs would then be reduced in gross by $96 million[2] to form the "Discontinued Operations Pool." *Id.* ¶ 2.1. The amount remaining in the Discontinued Operations Pool would be considered "allowable" indirect costs, *id.* ¶ 2.5, and allocated across Lockheed's various business divisions according to a three-factor formula, *id.* ¶ 2.8. The business divisions could then treat their allocated portion of the Discontinued Operations Pool as indirect costs on their government contracts.

The Billing Settlement accounted for the parties' agreement in the Burbank CERCLA suit. Because the government-as-PRP had agreed to pay Lockheed directly for a percentage of the response costs incurred at the Burbank site, that portion of the costs was excluded from the Settled Discontinued Operations Costs pool, to ensure that Lockheed did not recover the same costs twice. *Id.* ¶¶ 3.1, 3.2. The Settlement also prohibited Lockheed from "realiz[ing] a double recovery with regard to any Settled Discontinued Operations Costs" in the future. *Id.* ¶ 4.7. Lockheed was required to "reimburse the United States for any such double recovery of Settled Discontinued Operations Costs under government contracts." *Id.*

The question at this stage of the litigation is, How does Lockheed's Billing Settlement with the government-as-client affect its potential CERCLA recovery from the government-as-PRP for response costs associated with the Site?

### *Analysis*

The parties have cross-moved for a ruling on the validity of the government's double recovery defense. As noted above, the defense consists of two arguments: (1) that Lockheed is bound by the holding of a

California state court (in an insurance coverage dispute) that it is being reimbursed through its government contracts for its response costs at the Site; and (2) that, whether or not Lockheed is collaterally estopped by the California state court decision, it is in fact being reimbursed by the government for its response costs at the Site and cannot recover those costs under CERCLA. Neither of those two arguments is persuasive.

### A. Collateral estoppel

*Procter v. Lockheed Corp.* was a coverage dispute between Lockheed and several of its insurers. At stake was whether, and to what extent, the insurers were responsible for paying the response costs Lockheed was incurring at various sites, including the Site in this case. In that litigation, the court considered the import of the following clause (the "government reimbursement clause"), found with minimal variation in each of Lockheed's insurance policies:

THIS POLICY DOES NOT APPLY:

To any injury against which and to the extent that the Named Insured is *actually reimbursed* by the United States of America pursuant to the terms of any contract between the Named Insured and the United States of America.

Dkt. 25, Ex. 3, at 66 (emphasis added). The insurers argued that Lockheed was being "actually reimbursed" for its response costs because the government was factoring them into the indirect cost payments it made on Lockheed's contracts. Lockheed contended that the government's payments operated like a loan, not a reimbursement, because any insurance recovery it received would be credited back to the government.

---

**2.** Though the parties agreed that these costs were not "allowable" indirect costs, they could not agree on the reasons for that determination. *See id.* § 2.1.

The court sided with the insurers, reasoning along these lines: Because the government reimbursed contractors for their insurance premium payments, it encouraged contractors to include the government reimbursement clause in their policies to drive down premiums. *Id.*, at 71. Insurance companies accepted the lesser premiums in exchange for the guarantee that they only had to cover costs that the government did not cover through its contracts. *Id.*, at 72. If the insurers were required to pay Lockheed—which in turn would be required to pay the government—the insurers would be deprived "of the benefit of the bargain they received in consideration for lesser premiums." *Id.*

■ I must look to the law of the judgment state to determine the preclusive effect, if any, that *Procter* may have here. *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Under California law: (1) the issue to be precluded must be identical to that decided in the prior proceeding; (2) the issue must have been actually litigated at that time; (3) the issue must have been necessarily decided; (4) the decision in the prior proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be in privity with the party to the former proceeding. *People v. Garcia,* 39 Cal.4th 1070, 48 Cal. Rptr.3d 75, 141 P.3d 197, 201 (2006).

■ The issue decided in *Procter* concerned the meaning of the language of insurance policies. The decision did not define the term "actual reimbursement" for all time or in all contexts, but only established its meaning within the context of a number of insurance contracts. The government's collateral estoppel argument thus fails at the first element of California law: the issues in *Procter* and in the instant case are not identical.

**B. CERCLA**

Lockheed does not dispute the *fact* that it is including response costs from the Site in its calculation of indirect costs. Thus, the question before me—unencumbered by the rejected collateral estoppel argument—is the one presented by the government's second and sixteenth affirmative defenses, which assert that Lockheed cannot recover costs under CERCLA that it has billed to the government as indirect costs.

The government's second affirmative defenses states: "To the extent the Plaintiff recovers its costs from another party or entity, *or from the United States under any contract* or any statute other than CERCLA, Plaintiff is precluded by 42 U.S.C. § 9614(b) [section 114(b) of CERCLA] and/or applicable case law from receiving reimbursement for those costs from the United States under CERCLA." Dkt. 19, at 15 (emphasis added). The sixteenth affirmative defense echoes that argument, sans legal citation: "Plaintiff is barred from recovering its alleged response costs because the United States has already paid its share of any environmental cleanup costs associated with contracts between Plaintiff and the United States, and Plaintiff's recovery of such costs would result in double recovery that is unlawful and inequitable." *Id.*, at 18.

The government's legal foothold is section 114(b) of CERCLA, which provides, "[a]ny person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same removal costs or damages or claims as provided in this chapter." 42 U.S.C. § 9614(b). The argument is that "the FAR and its implementing statutes are federal law," so that "the United States' reimbursement of Lockheed Martin's response costs in accordance with the FAR constitutes 'compensation for remov-

al costs or damages or claims pursuant to any other Federal … law.'" Dkt. 25, at 12.

■ The argument does not distinguish government-as-client from government-as-PRP, even though, in context, the term "compensation" in section 114(b) implies a payment from a liable party—an insurer, a private PRP, or the government—to a plaintiff to cover some portion of the plaintiff's response costs. The government-as-client's indirect cost payments are not made in recognition of, or in compensation for, the government's CERCLA liability for those response costs. Indeed, the Billing Agreement explicitly states that it "does *not* settle claims, if any, arising under CERCLA." Dkt. 25, Ex. 3, § 4.18 (emphasis added).

The government relies on a number of section 114(b) cases to support its argument. *See Vine Street, LLC v. Keeling,* 460 F.Supp.2d 728, 765 (E.D.Tex.2006); *Boeing Co. v. Cascade Corp.,* 207 F.3d 1177, 1189–90 (9th Cir.2000); *K.C. 1986 LP v. Reade Mf'g,* 472 F.3d 1009, 1017 (8th Cir.2007); *Ashtabula River Corp. Group II v. Conrail, Inc.,* 549 F.Supp.2d 981, 985–86 (N.D.Ohio 2008); *Friedland v. TIC–The Indus. Co.,* 2008 WL 185693, *3 (D.Colo. Jan. 18, 2008); *Basic Mgmt. Inc. v. United States,* 569 F.Supp.2d 1106, 1119–1120 (D.Nev.2008). Each of these cases involved one of three scenarios, all distinguishable from this case: (1) the plaintiff sought to recover costs that it had already recovered as part of a CERCLA settlement with another responsible party (*Vine Street, Boeing, Reade, Friedland*); (2) the plaintiff sought to recover costs that it had already recovered under a state equivalent of CERCLA (*Ashtabula*); or (3) the plaintiff sought to recover costs that it had not actually incurred because its insurer had paid for them directly (*Basic*). In each instance, the court applied section 114(b) to reject the plaintiff's claim

because it did not want the plaintiff to receive a windfall from its environmental cleanup.

Here, there is no windfall. The contract payment framework and the requirements of the Billing Settlement ensure that Lockheed will not realize a double recovery. The FAR contains a Credits Clause, which provides that "[t]he applicable portion of any income, rebate, allowance, or other credit relating to any allowable cost and received by or accruing to the contractor shall be credited to the Government either as a cost reduction or by cash refund." 48 C.F.R. § 31.201–5. The Billing Agreement reinforces that requirement by obligating Lockheed to "reimburse the United States for any such double recovery of Settled Discontinued Operations Costs under government contracts." Dkt. 25, Ex. 3, § 4.7. As I read those provisions—and, crucially, as Lockheed reads those provisions, *see* Dkt. 26, at 8—any CERCLA recovery from the government would lead to a commensurate reduction in the Settled Discontinued Operations Costs pool that Lockheed could charge as indirect costs on its government contracts. From a monetary standpoint, Lockheed would be back where it started.

The government itself explained this process in *United Tech. Corp. v. Am. Home Assurance Co.,* No. 92–0267 (D.Conn. Dec. 12, 2000), Dkt. 32, at 19–35, in which it filed a Statement of Interest. Dkt. 26, Ex. 5. The plaintiff, UTC, sued its insurer, AHA, claiming that AHA was required to cover some of the response costs it was incurring. AHA refused, arguing that UTC had already recovered those costs through its government contracts. The government urged the court to reject AMA's argument, noting: "[T]he government is not an insurer and it has not 'paid' for these costs. Rather, it has allowed these costs to be incorporated into the prices it has paid under negotiated govern-

ment contracts, through their inclusion in overhead cost pools that are separately applied to thousands of underlying contracts." *Id.,* at 13. The government contended that the only way to ensure that no party received a windfall was to order AMA to cover UTC's response costs. Then, as required by the Credits Clause, UTC would credit that recovery back to its government clients. *Id.,* at 16–17.

The result here may appear to be a zero-sum proposition for both the government and Lockheed, but it has important implications for both parties. The "government-as-PRP," which would be responsible for paying for Lockheed's CERCLA recovery, is different from the "government-as-client," which would get that money back from Lockheed. Any award Lockheed would receive in this action would be paid out of the Judgment Fund, the money that Congress has allocated to pay for awards obtained against the federal government. *See* 1993 WL 505822, 73 Comp. Gen. at *48. The practical effect of satisfying Lockheed's CERCLA claims out of the Judgment Fund would be to reduce the indirect costs Lockheed could pass on to its government clients (the Department of Defense and other agencies), effectuating Congress' desire to have CERCLA liability come from the Judgment Fund, not from the budgets of various government agencies.

For Lockheed, the utility of proceeding under CERCLA is the opportunity to improve its competitive position in the marketplace for government work. Lockheed might be able to recover all of its response costs as indirect costs on its government contracts. But proceeding in that way makes Lockheed less competitive in future contests for government contracts, because its need to recover response costs through indirect cost payments would require inflated and possibly non-competitive bids. If Lockheed is only partially liable for the response costs it is incurring at the Site, it should not have to include all its response costs in the Settled Discontinued Operations Pool. The ruling on the instant motions ensures that Lockheed may recover separately under CERCLA from the government-as-PRP (if the suit ends with a recovery), burdened in its dealings with the government-as-client only by those costs for which it is actually liable.

### Conclusion

The government's motion for summary judgment [# 25] is **denied,** and Lockheed's Rule 56(f) motion for a continuance [# 26] is **denied** as moot. Lockheed's motion for judgment on the pleadings [# 27] is **granted in part:** the sixteenth affirmative defense is wholly invalid, while the second affirmative defense is invalid insofar as it asserts that Lockheed cannot recover costs under CERCLA that it has billed to the government as indirect costs.

The Clerk is directed to set a status conference within thirty days.

It is **SO ORDERED.**